# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-4106
Lower Tribunal No. 2020CA-000514-0000-00

_____

ELISAMUEL CABALLERO-QUINONES,

Appellant,

v.

KYLE T. WILDER, WILDER OUTDOORS, LLC, and SHERIFF GRADY JUDD, in his
official capacity as Sheriff of Polk County,

Appellees.

_____

Appeal from the Circuit Court for Polk County.
William D. Sites, Judge.

April 17, 2026

MIZE, J.

Appellant, Elisamuel Caballero-Quinones ("Plaintiff"), appeals the trial

court's final judgment and its order denying Plaintiff's motion for new trial. Plaintiff

asserts that the trial court erred by excluding the deposition testimony of the

organizational representative[1] of Appellee, Sheriff Grady Judd (the "Sheriff"),

concerning the Sheriff's office's investigation of the car accident that is the subject

---

[1] *See* Fla. R. Civ. P. 1.310(b)(6).

of this case. Because we agree that the legal grounds relied upon by the trial court to exclude the representative's deposition testimony did not support exclusion of the testimony, we reverse the final judgment and remand for a new trial.

In reversing the final judgment, we reject the Sheriff's argument that we should affirm the trial court under the tipsy coachman doctrine because the representative's deposition testimony was properly excludable under Section 90.403, Florida Statutes ("Rule 403"). The trial court did not perform a Rule 403 analysis, and we conclude that an appellate court cannot conduct such an analysis in the first instance in order to affirm a trial court under the tipsy coachman doctrine. This holding places us in conflict with two decisions of the First District, *Childers v. State,* 936 So. 2d 585 (Fla. 1st DCA 2006), and *Mizell v. State*, 350 So. 3d 97 (Fla. 1st DCA 2022). Accordingly, pursuant to Article V, Section 3(b)(4) of the Florida Constitution, we certify this decision to be in direct conflict with those decisions.

## Background and Procedural History

Plaintiff is a mail carrier for the United States Postal Service. On the date of the incident that gave rise to this case, he was stopped at a red light in a busy intersection in his mail truck. On the opposite side of the intersection, facing Plaintiff, Polk County Sheriff's Deputy Edwin Harvey ("Deputy Harvey") was driving through the intersection in his police vehicle while on duty with the Sheriff's Office. Detective Harvey had received an emergency call and activated his lights

2

and sirens to pass a red light and proceed through the intersection. When he went through the intersection, he collided with Kyle Wilder ("Wilder") who was driving his truck through the intersection past a green light on Plaintiff's lefthand side. The impact between Deputy Harvey's police vehicle and Wilder's truck caused the truck to crash into Plaintiff's mail truck. The impact rendered the mail truck inoperable, and Plaintiff sustained injuries.

Plaintiff filed suit against the Sheriff's office, alleging that the Sheriff's office was vicariously liable for the negligence of Deputy Harvey.[2] The primary dispute in the case was whether the collision was caused by Wilder's failure to yield to the police vehicle or by Deputy Harvey's failure to act with sufficient caution when he passed through a red light to cross the intersection.

During the litigation, Plaintiff took the deposition of Lieutenant Anthony Allaire ("Lieutenant Allaire") as the organizational representative of the Sheriff's Office pursuant to Florida Rule of Civil Procedure 1.310(b)(6). Lieutenant Allaire had previously worked as a member of the Sheriff's Office's traffic safety board, the panel which evaluated Deputy Harvey's actions in the collision on behalf of the Sheriff's office. In his testimony, Lieutenant Allaire explained that the traffic safety board utilized a points system for evaluating collisions—it would assess points and

---

[2] Plaintiff also sued Wilder and Wilder's LLC but later dismissed both of them from the case. Neither Wilder nor Wilder's LLC have appeared in this appeal.

then send those points to the involved officer's commander to impose discipline. The points were based off various factors, such as past incidents, the circumstances of the collision, seatbelt use, the use of emergency lights and sirens, whether the collision caused injury or damage, and whether the collision was a "preventable crash." He explained that a "preventable crash" was "a crash where the agency member operating the vehicle could have done something to -- on his part or his operation of the vehicle to avoid the crash." If the officer could not have reasonably done anything to prevent the crash from occurring, then the crash was not a preventable crash.

Lieutenant Allaire testified that the traffic safety board determined that Deputy Harvey's collision was a preventable crash and the crash was Deputy Harvey's fault. According to Lieutenant Allaire, the board "felt that he didn't exert enough caution when he entered the intersection . . . he could have been a little more cautious when proceeding through and possibly could have seen there was another situation presenting itself that could have caused a crash." The traffic safety board assessed points against Deputy Harvey, who then received a suspension for violating agency policy by failing to yield and getting into a preventable crash which caused injury and property damage. In his deposition, Lieutenant Allaire also testified that the Sheriff's deputy who initially investigated the collision also determined that Deputy Harvey was at fault for the collision and issued Deputy Harvey a traffic

4

citation for failure to yield at an intersection. Lieutenant Allaire testified that, in fact, every department of the Sheriff's office that evaluated the collision determined that the collision was preventable and that it was Deputy Harvey's fault.

The Sheriff's office filed a motion in limine to exclude Lieutenant Allaire's testimony, arguing that it contained hearsay, was a subsequent remedial measure, was irrelevant, and that its prejudicial effect would outweigh its probative value. The Sheriff's office also argued that whether something was a "preventable crash" was "a much higher standard than will be applied by the jury on the issue of liability." The trial court held a hearing on the motion in limine. While it appears that the trial court orally granted the motion at the hearing, the trial court never entered an order on the motion. When the parties appeared for trial, they then disagreed on the details and effect of the trial court's ruling on the motion in limine. As a result, the parties argued about the motion in limine again, both before and during the trial. Before the trial, the discussion between the parties and the court did not touch upon the basis for the trial court's ruling but merely concerned the scope of the ruling. That discussion resulted in the trial court ordering Plaintiff not to mention Lieutenant Allaire's testimony or the Sheriff's office's investigation of the collision during the trial without first asking the trial court's permission.

Near the end of the defense's case-in-chief, during a break in Deputy Harvey's testimony, Plaintiff's counsel informed the court that Plaintiff would now seek to

5

use Lieutenant Allaire's deposition testimony in rebuttal to Deputy Harvey's testimony. Plaintiff's counsel asserted that Deputy Harvey's testimony was that Deputy Harvey was not at fault for the collision, and so the door had been opened for Plaintiff to introduce Lieutenant Allaire's testimony that the Sheriff's Office determined that Deputy Harvey was "at fault for this crash and that this was a preventable crash." In response, the Sheriff's counsel asserted that the trial court's previous ruling at the hearing on the motion in limine ruling had been based on three grounds: (1) Lieutenant Allaire's testimony was hearsay; (2) the Sheriff's office's investigation about which Lieutenant Allaire testified was a subsequent remedial measure; and (3) Lieutenant Allaire's testimony was not relevant. The Sheriff's counsel argued that these grounds were correct and that Lieutenant Allaire's testimony should be excluded. Plaintiff's counsel responded by arguing that: (1) Lieutenant Allaire's organizational representative testimony that Deputy Harvey was at fault for the accident was the official position of the Sheriff's office in the case and should be admitted; (2) Lieutenant Allaire's testimony should be admitted as an admission against interest by the Sheriff's office; (3) while the discipline that Deputy Harvey received was a subsequent remedial measure, the investigation itself and the Sheriff's office's conclusion that the collision was preventable and that Deputy Harvey was at fault was not a subsequent remedial measure; (4) the Sheriff's office's investigation and its conclusion that Deputy Harvey was at fault for the

6

collision was relevant evidence that the jury could consider in determining whether Deputy Harvey was negligent. Plaintiff's counsel also specified that Plaintiff only intended to offer Lieutenant Allaire's testimony that he conducted the investigation for the traffic safety board and that the board found that Deputy Harvey was at fault for the collision. Plaintiff's counsel did not intend to offer any testimony concerning the fact that Deputy Harvey received a traffic citation or concerning any discipline that Deputy Harvey received.

After hearing the parties' arguments, the trial court ruled that the Sheriff's office's investigation about which Lieutenant Allaire testified was protected by the accident report privilege and, therefore, Lieutenant Allaire's testimony was not admissible. The trial court also indicated during its discussions with the parties and its ruling that it believed that the Sheriff's office investigation was a subsequent remedial measure and that Lieutenant Allaire's testimony was evidence of a traffic citation.

After the trial court's ruling, Deputy Harvey completed the rest of his testimony. At the conclusion of the trial, the jury returned a verdict finding that Deputy Harvey was not negligent. Plaintiff moved for a new trial on the ground that the trial court erred by not admitting Lieutenant Allaire's deposition testimony because the testimony was an admission against interest. The Sheriff filed a response arguing that: (1) Lieutenant Allaire's testimony was protected by the

7

accident report privilege; (2) Lieutenant Allaire's testimony was inadmissible evidence of a traffic citation; (3) the Sheriff's office's investigation about which Lieutenant Allaire testified was a subsequent remedial measure; and (4) the probative value of Lieutenant Allaire's testimony was substantially outweighed by the danger of unfair prejudice. The trial court denied the motion for new trial in an unelaborated order and entered a final judgment in favor of the Sheriff. This appeal followed.

## Analysis

"Admissibility of evidence is within the sound discretion of the trial court, and the trial court's ruling will not be disturbed on appellate review unless there is an abuse of discretion." *Smith v. State*, 415 So. 3d 278, 291 (Fla. 6th DCA 2025) (quoting *Joseph v. State*, 336 So. 3d 218, 234 (Fla. 2022)). "However, a court's discretion is limited by the evidence code and a court's erroneous interpretation of the evidence code is subject to de novo review." *Barcomb v. State*, 68 So. 3d 412, 414 (Fla. 4th DCA 2011). A trial court's interpretation of statutes creating evidentiary privileges is likewise subject to de novo review. *Orosco v. Rodriguez*, 376 So. 3d 92, 94 (Fla. 6th DCA 2023) ("[A] trial court's interpretation and application of a statute is reviewed de novo."). In this case, the trial court's

interpretation of the evidence code and statutory privileges concerning accident reports and traffic citations were all erroneous.[3]

## I. The Accident Report Privilege

As detailed above, the trial court found that Lieutenant Allaire's testimony about the Sheriff's office's investigation was inadmissible under the accident report

---

[3] At the outset, we note that the discussion in the trial court concerning whether Lieutenant Allaire's testimony was an "admission against interest" was a red herring. A party's own out-of-court statement that is offered against the party is a hearsay exception, as is an out-of-court statement made by a person specifically authorized by a party to make a statement concerning the subject of the statement. § 90.803(18)(a), (c), Fla. Stat. However, Lieutenant Allaire's deposition testimony was not hearsay and so no hearsay exception was necessary for the testimony to be admitted. Florida Rule of Civil Procedure 1.330(a)(2) provides that the deposition of a party or a party's organizational representative designated under Rule 1.310(b)(6) may be used by an adverse party for any purpose "*as though the witness were then present and testifying.*" (emphasis added). Therefore, the deposition of party's organizational representative may be used by an adverse party in trial as if the deposition was live testimony. Since Lieutenant Allaire's deposition testimony was equivalent to live in-court testimony, it was not hearsay and no hearsay exception was necessary for the deposition to be introduced and utilized at trial. *See Kelley v. Webb*, 676 So. 2d 538, 540 (Fla. 5th DCA 1996); *LaTorre By & Through LaTorre v. First Baptist Church of Ojus, Inc.*, 498 So. 2d 455, 458 (Fla. 3d DCA 1986); *Canales v. Compania de Vapores Realma, S.A.*, 564 So. 2d 1212, 1214 (Fla. 3d DCA 1990); *Borden Dairy Co. of Ala., LLC v. Kuhajda*, 152 So. 3d 763, 766 (Fla. 1st DCA 2014); *Castaneda ex rel. Cardona v. Redlands Christian Migrant Ass'n, Inc.*, 884 So. 2d 1087, 1091-92 (Fla. 4th DCA 2004). Of course, any hearsay statements within Lieutenant Allaire's deposition testimony would be excludable as hearsay absent some applicable hearsay exception, but Lieutenant Allaire's testimony itself was not hearsay and required no hearsay exception to be admissible. On appeal, the Sheriff's office no longer contends that Lieutenant Allaire's testimony was hearsay or that the testimony was not relevant.

privilege. The accident report privilege is contained within section 316.066, Florida Statutes, which provides in pertinent part:

(1)(a) A Florida Traffic Crash Report, Long Form must be completed and submitted to the department within 10 days after an investigation is completed by the law enforcement officer who in the regular course of duty investigates a motor vehicle crash that:

1. Resulted in death of, personal injury to, or any indication of complaints of pain or discomfort by any of the parties or passengers involved in the crash;

2. Involved a violation of s. 316.061(1) or s. 316.193;

3. Rendered a vehicle inoperable to a degree that required a wrecker to remove it from the scene of the crash; or

4. Involved a commercial motor vehicle.

(b) The Florida Traffic Crash Report, Long Form must include:

1. The date, time, and location of the crash.

2. A description of the vehicles involved.

3. The names and addresses of the parties involved, including all drivers and passengers, and the identification of the vehicle in which each was a driver or a passenger.

4. The names and addresses of witnesses.

5. The name, badge number, and law enforcement agency of the officer investigating the crash.

6. The names of the insurance companies for the respective parties involved in the crash.

. . .

(4) Except as specified in this subsection, each crash report made by a person involved in a crash and *any statement made by such person to a law enforcement officer for the purpose of completing a crash*

10

***report*** required by this section shall be without prejudice to the individual so reporting. ***Such report or statement may not be used as evidence in any trial, civil or criminal***. However, subject to the applicable rules of evidence, a law enforcement officer at a criminal trial may testify as to any statement made to the officer by the person involved in the crash if that person's privilege against self-incrimination is not violated.

(emphasis added).

The "plain meaning of the statute is always the starting point in statutory interpretation." *Alachua Cnty. v. Watson*, 333 So. 3d 162, 169 (Fla. 2022). In this case, we need not go farther than that starting point, as the text of section 316.066 is clear and unambiguous. Section 316.066 provides that a crash report made by a person involved in a crash and any statement made to a law enforcement officer for the purpose of completing a crash report required by section 316.066 may not be used as evidence in any trial. Neither the traffic safety board's investigation nor Lieutenant Allaire's testimony about the investigation was a crash report made pursuant to section 316.066, and neither the investigation nor Lieutenant Allaire's testimony was a statement made to a law enforcement officer for the purpose of completing such a crash report. None of the testimony of Lieutenant Allaire that Plaintiff sought to introduce mentioned any crash report prepared pursuant to section 316.066 or any statement made to a law enforcement officer for the purpose of completing a crash report pursuant to section 316.066. For this reason, the trial court

11

erred in excluding the deposition testimony of Lieutenant Allaire under the accident report privilege.

## II. The Traffic Citation Privilege

Section 316.650(9), Florida Statutes, provides that traffic "citations shall not be admissible evidence in any trial, except when used as evidence of falsification, forgery, uttering, fraud, or perjury, or when used as physical evidence resulting from a forensic examination of the citation." This provision makes only traffic citations inadmissible at trial – it does not make inadmissible the results of any investigation involving a person that received a traffic citation or the results of any investigation that relied in some part on a traffic citation. None of the testimony of Lieutenant Allaire that Plaintiff sought to introduce mentioned any traffic citation. Plaintiff's counsel specifically conceded that Plaintiff would not seek to introduce any portion of Lieutenant Allaire's testimony in which Lieutenant Allaire mentioned the traffic citation issued to Deputy Harvey. For this reason, the trial court erred in excluding the deposition testimony of Lieutenant Allaire under the traffic citation privilege.

## III. Subsequent Remedial Measures

The subsequent remedial measures privilege is contained in section 90.407, Florida Statutes, which provides in pertinent part:

> Evidence of measures taken after an injury or harm caused by an event, which measures if taken before the event would have made injury or harm less likely to occur, is not admissible to prove negligence, the

existence of a product defect, or culpable conduct in connection with the event.

The Sheriff argues that Lieutenant Allaire's testimony was properly excluded under section 90.407 because the purpose of the Sheriff's office's investigation was to determine whether to take remedial measures, including whether to discipline Deputy Harvey. However, section 90.407 makes evidence of subsequent remedial *measures* inadmissible, not evidence of investigations that were conducted to determine whether to take subsequent remedial measures or reports that resulted from such investigations. *See Castaneda ex rel. Cardona v. Redlands Christian Migrant Ass'n, Inc.*, 884 So. 2d 1087, 1093 (Fla. 4th DCA 2004) (holding that the portion of a memorandum written by a party's employee concerning the cause of an accident for which the party was sued was improperly excluded as evidence of a subsequent remedial measure). None of the testimony of Lieutenant Allaire that Plaintiff sought to introduce mentioned any discipline imposed against Deputy Harvey or any other remedial measure taken by the Sheriff's office. Plaintiff's counsel specifically conceded that Plaintiff would not seek to introduce any portion of Lieutenant Allaire's testimony in which Lieutenant Allaire mentioned that Deputy Harvey was disciplined.[4] For this reason, the trial court erred in excluding the

---

[4] Since Plaintiff did not seek to introduce any portion of Lieutenant Allaire's testimony in which Lieutenant Allaire mentioned that Deputy Harvey was disciplined, we need not, and do not, decide whether employee discipline is a subsequent remedial measure, i.e., a measure taken after the relevant event that, "if taken before the event would have made injury or harm less likely to occur."

13

deposition testimony of Lieutenant Allaire as evidence of a subsequent remedial measure.

## IV. The Tipsy Coachman Doctrine and Section 90.403, Florida Statutes

The trial court did not conduct a Rule 403 analysis during the trial below. We do not have a transcript of the hearing on the motion in limine. However, the Sheriff conceded in his Answer Brief that the trial court did not grant the motion in limine based on Rule 403. Additionally, when the parties discussed the hearing on the motion in limine at the trial, the Sheriff's counsel provided a list of the three grounds upon which the trial court based its ruling at the hearing, which did not include Rule 403. Because the Sheriff conceded below and on appeal that the trial court's limine ruling was not based on Rule 403, we do not find the record insufficient to demonstrate that the trial court did not base its exclusion of Lieutenant Allaire's testimony on Rule 403.[5] *See Creative Hardscapes, LLC v. Prawdzik*, 397 So. 3d 163,

---

[5] The Sheriff likewise does not contend that the trial court based its ruling excluding Lieutenant Allaire's testimony on any other ground which could serve as a basis to affirm the trial court. As noted above, while the Sheriff's office argued below that Lieutenant Allaire's testimony was hearsay and not relevant, the Sheriff no longer makes these arguments on appeal. Nor could he. The testimony was obviously relevant and, for the reasons explained supra in note 3, it was not hearsay. While the Sheriff does not argue on appeal that Lieutenant Allaire's testimony was not relevant, we note Judge Wozniak's assertion that Lieutenant Allaire's testimony was in fact not relevant. However, we simply cannot reconcile this assertion with the relevance standard. Lieutenant Allaire's deposition was the organizational deposition for the Sheriff's office. Thus, his testimony that Deputy Harvey was at fault for the accident and could have prevented the accident was the testimony of the defendant in the lawsuit. The defendant admitting that it was at fault for an accident

14

169 (Fla. 6th DCA 2024) (finding that the record was not insufficient to determine that the trial court did not base its ruling on a particular legal ground even without a transcript of the relevant hearing where both parties contended that the trial court did not reach that issue).

Having conceded that the trial court did not exclude Lieutenant Allaire's testimony under Rule 403, the Sheriff argues that we should affirm the trial court's ruling under the tipsy coachman doctrine because Lieutenant Allaire's deposition testimony was in fact properly excludable under Rule 403. We decline to do so, however, because we conclude that where a trial court has not conducted a Rule 403 analysis, an appellate court cannot do so in the first instance.

"Under the tipsy coachman doctrine, where the trial court reaches the right result, but for the wrong reasons, an appellate court can affirm the decision only if there is any theory or principle of law *in the record* which would support the ruling." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Robertson v. State*, 829 So. 2d 901, 906 (Fla. 2002) (internal quotations omitted, emphasis in original)); *see also Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150, 1152 (Fla. 1979) ("The

---

and that it could have prevented the accident is certainly "evidence tending to prove" negligence by the defendant, even if it is not dispositive of that question, just as a defendant's testimony that it was not at fault and could not have prevented an accident would tend to disprove negligence. § 90.401, Fla. Stat. Under the governing standard, the defendant's own determination that it was at fault for a car accident and that it could have prevented the accident is just obviously relevant to whether the defendant was negligent with respect to that accident.

written final judgment by the trial court could well be wrong in its reasoning, but the decision of the trial court is primarily what matters, not the reasoning used. . . . Even when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternative theory supports it.").

The tipsy coachman doctrine flows naturally from the presumption of correctness. *Applegate*, 377 So. 2d at 1152 ("In appellate proceedings the decision of a trial court has the presumption of correctness and the burden is on the appellant to demonstrate error."). An appellant cannot overcome the presumption of correctness and demonstrate error if there is some reason that the trial court's judgment was in fact correct, even if that reason was not argued to the trial court or the appellate court. *See Cohen v. Mohawk, Inc.*, 137 So. 2d 222, 225 (Fla. 1962) ("It should be kept in mind that the judgment of the trial court reached the district court clothed with a presumption in favor of its validity. . . .Accordingly, if upon the pleadings and evidence before the trial court, there was *any* theory or principle of law which would support the trial court's judgment in favor of the plaintiffs, the district court was obliged to affirm that judgment. (internal citations omitted, emphasis in original)); *Chase v. Cowart*, 102 So. 2d 147, 150 (Fla. 1958) (on rehearing, discussing the appellant's objection to the Court having affirmed on a ground not raised by the appellee, "This is easily explained. Decrees and judgments in cases which come to an appellate court for review are presumed to be correct and

16

free from error. We are required to uphold the lower court if valid grounds exist therefor. While the grounds or reasoning used by the trial court or chancellor are frequently helpful to an appellate court on review, they are not controlling. The decision of the appellate court must be made, not on the basis of whether the trial court or chancellor traveled the proper route, used proper reasoning, or laid his conclusion on proper grounds, but rather on whether his conclusion is correct or incorrect."); *State v. Hankerson*, 65 So. 3d 502, 505 (Fla. 2011), *as revised on denial of reh'g*, (June 30, 2011) ("[B]ecause a trial court's ruling must be affirmed where the record supports any legal basis for the judgment, an appellee may raise an argument on appeal that was not raised in the trial court so long as the argument has a reasonable basis in the record."); *Beans v. Beans*, 407 So. 3d 483, 491 n.8 (Fla. 1st DCA 2024), *reh'g denied*, (Apr. 30, 2025) ("The 'principle of preservation' is not in play when an appellate court affirms. . . . [T]he theories or reasons assigned by the lower court as its basis for the order or judgment appealed from are not in any way controlling on appeal and the Appellate Court will make its own determination as to the correctness of the decision of the lower court." (quoting *In re Yohn's Est.*, 238 So. 2d 290, 295 (Fla. 1970) (internal alterations omitted))); *Freeman v. State*, 373 So. 3d 1255, 1257 n.2 (Fla. 1st DCA 2023) ("[A]n appellee need not present to the trial court the grounds on which the appellate court affirms the trial court's ruling. . . . And an appellee need not present to the appellate court the grounds for affirming

17

the judgment of the trial court. . . . Indeed, the appellate court may affirm even when the appellee does not serve an answer brief." (citing *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 644 (Fla. 1999) and *MacNeill v. O'Neal*, 238 So. 2d 614, 615 (Fla. 1970))); *Hicks v. State*, 277 So. 3d 153, 156 n.3 (Fla. 1st DCA 2019) ("Nor can we accept the dissent's view that we are acting unfairly by 'sua sponte raising new issues.' There is a difference between raising new grounds for reversal (which we should not do) and affirming based on any basis the record supports (which we must do). It is the appellant's burden to show we must reverse, and he cannot meet that burden without overcoming all bases for affirmance." (cleaned up)); *State v. Pitts*, 936 So. 2d 1111, 1133 (Fla. 2d DCA 2006) (stating that under the tipsy coachman doctrine, an appellate court should affirm the trial court "even if the specific grounds articulated by the trial court were erroneous" and "even if the specific basis for affirmance has not been articulated by the appellee" (citations omitted)); *State v. Sims*, 110 So. 3d 113, 116 (Fla. 1st DCA 2013) ("An appellate court has authority to consider an argument not made on appeal as an alternative basis for affirmance." (citing *Dade Cnty. Sch. Bd.*, 731 So. 2d 638)); *Jaworski v. State*, 804 So. 2d 415, 419 (Fla. 4th DCA 2001), *on reh'g*, (Dec. 26, 2001) ("As an appellate court, however, we are obligated to entertain any basis to affirm the judgment under review, even one the appellee has failed to argue.").

However, "[t]he key to the application of [the tipsy coachman doctrine] is that there must have been support for the alternative theory or principle of law in the record before the trial court." *Robertson*, 829 So. 2d at 906-07. "In the absence of support in the trial court record, the 'tipsy coachman' doctrine does not apply." *Porter v. Porter,* 913 So. 2d 691, 694 (Fla. 3d DCA 2005); *see also Hankerson*, 65 So. 3d at 505 ("A trial court's ruling should be upheld if there is any legal basis *in the record* which supports the judgment." (emphasis added)); *Guglielmo v. DOC Zephyrhills C I/ Div. of Risk Mgmt.*, 418 So. 3d 656, 666 (Fla. 1st DCA 2025) ("Although the 'tipsy-coachman' doctrine allows this Court to affirm a trial court judgment that is 'right for the wrong reason,' the record must support the theory or argument.").

The question in this case is whether the record supports this court employing Rule 403 to affirm the trial court's decision to exclude Lieutenant Allaire's testimony. We conclude that the nature of Rule 403 is such that where the trial court did not perform a Rule 403 analysis, an appellate court cannot conduct such an analysis in the first instance in order to affirm a trial court under the tipsy coachman doctrine.

Rule 403 provides that "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." §

90.403, Fla. Stat. (2025). Whether to exclude evidence under Rule 403 is inherently and necessarily a discretionary decision by a trial court. *Eugene v. State*, 53 So. 3d 1104, 1112 n.3 (Fla. 4th DCA 2011) ("[W]hether evidence is admissible under section 90.403, Florida Statutes (2008), is a discretionary ruling of a trial court."); *State v. McClain*, 525 So. 2d 420, 422 (Fla. 1988) ("This statute compels the trial court to weigh the danger of unfair prejudice against the probative value. In applying the balancing test, the trial court necessarily exercises its discretion."); *Taylor v. State*, 855 So. 2d 1, 22 (Fla. 2003) ("[A] large measure of discretion rests in the trial judge to determine whether the probative value of the evidence is substantially outweighed by its prejudicial effect."). That is why a trial court's decision of whether or not to exclude evidence under Rule 403 is reviewed by an appellate court for abuse of discretion. *State v. Gerry*, 855 So. 2d 157, 159-60 (Fla. 5th DCA 2003).

In determining whether to exclude evidence under Rule 403, the trial court "must weigh the proffered evidence against the other facts in the record and balance it against the strength of the reason for exclusion." *McClain*, 525 So. 2d at 422 (quoting 1 Charles W. Ehrhardt, *Florida Evidence*, § 403.1 100-03 (2d ed. 1984)); *see also Gerry*, 855 So. 2d at 160 ("[A] balancing test must be utilized where the probative value for the party seeking to introduce the evidence is weighed against the danger of unfair prejudice to the party who objects to the introduction of the evidence."). To conduct this balancing test, the trial court considers "the need for

the evidence; the tendency of the evidence to suggest an improper basis to the jury for resolving the matter, e.g., an emotional basis; the chain of inference necessary to establish the material fact; and the effectiveness of a limiting instruction." *Taylor*, 855 So. 2d at 22 (quoting *McClain*, 525 So. 2d at 422).

The nature of a court exercising discretion based on the specific facts and evidence at issue in a case dictates "that the same item of evidence may be admissible in one case and not in another, depending upon the relation of that item to the other evidence." *McClain*, 525 So. 2d at 422. And the nature of discretion itself is such that there may be cases in which a trial court could choose to admit or exclude an item of evidence under Rule 403, and either decision would be within its discretion. After all, if there is never more than one right answer, then there is no discretion. *See Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315-16 (11th Cir. 2005) ("Under the abuse of discretion standard of review there will be occasions in which we affirm the [trial] court even though we would have gone the other way had it been our call." (quoting *Rasbury v. Internal Revenue Serv.*, 24 F.3d 159, 168 (11th Cir. 1994) (internal alterations omitted))); *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989) ("The abuse of discretion standard has been described as allowing a range of choice for the [trial] court . . .").

Because a decision of whether to exclude evidence under Rule 403 is inherently a discretionary decision of a trial court based on the specific facts and

evidence at issue in a case, it is not appropriate for an appellate court to make this decision in the first instance. The record before the appellate court cannot support such a decision because the appellate court simply cannot know which way the trial court would have exercised its discretion. We may be able to determine whether a decision to exclude evidence would have been within the trial court's discretion, but we cannot determine whether the trial court would have actually exercised its discretion in that manner.[6]

Moreover, not only are we unable to determine how the trial court would have exercised its discretion, but we are also not in the same position as the trial court would be to exercise that discretion ourselves – because when the trial court considers all of the evidence and facts in a case to perform the balancing test required by Rule 403, that will necessarily include consideration of evidence and facts that the trial court is uniquely positioned to evaluate, such as live testimony that has

---

[6] Judge Wozniak asserts that any ruling by the trial judge under Rule 403 admitting Lieutenant Allaire's testimony would in fact have been an abuse of discretion, and that such a ruling on remand consequently "would be fertile for reversal." We simply disagree that, on this record, we can conclude that no reasonable trial judge that conducted a Rule 403 analysis would have admitted Lieutenant Allaire's testimony. The case relied upon by Judge Wozniak, *Kutner v. State, Dep't of Highway Safety & Motor Vehicles*, 568 So. 2d 973 (Fla. 3d DCA 1990), did not involve testimony of the defendant's organizational representative in which the defendant admitted fault for the car accident that was the subject of the lawsuit. A defendant's own admission that it could have prevented an accident and that it was at fault for the accident is certainly highly probative of whether the defendant was negligent with respect to the accident.

22

occurred in the case and the jury's reaction to particular witnesses and items of evidence. We are simply not in the same position as a trial court to conduct a Rule 403 balancing determination in the first instance. Appellate courts review discretionary decisions as to the admission of evidence; we do not make such decisions in the first instance.

Because an appellate court cannot determine from the record whether the trial court would have exercised its discretion to exclude particular evidence under Rule 403, and an appellate court cannot conduct an analysis in the first instance in the same manner as a trial court would, we conclude that where a trial court has not performed a Rule 403 analysis to exclude a particular item of evidence, the record cannot support affirming a trial court's decision to exclude the evidence based on Rule 403. Since the record does not support excluding the evidence under Rule 403, we cannot apply the tipsy coachman doctrine to affirm the trial court's exclusion of evidence on that basis. *See Webster v. Body Dynamics, Inc.*, 27 So. 3d 805, 809 n. 12 (Fla. 1st DCA 2010).

We find support for our decision in the Florida Supreme Court's decision in *Robertson*. 829 So. 2d 901. In *Robertson*, the Supreme Court declined to employ the tipsy coachman doctrine to affirm the admission of evidence concerning prior crimes of the defendant under section 90.404(2), Florida Statues, also known as the *Williams* rule, in part, because the trial court did not make the determinations

23

necessary for the evidence to be admitted under the *Williams* rule, which included both factual findings and discretionary determinations, such as "whether the prejudicial effect of the prior crime substantially outweighs its probative value." *Id*. at 907-08.[7]

We also find support for our conclusion in the decisions of our sister courts holding that grounds for affirmance that require factual findings by a trial court cannot serve as a basis to affirm under the tipsy coachman doctrine where the trial court did not make the required factual findings. *See, e.g.*, *Featured Props., LLC v. BLKY, LLC*, 65 So. 3d 135, 137 (Fla. 1st DCA 2011) ("[W]e cannot employ the tipsy coachman rule where a lower court has not made factual findings on an issue and it would be inappropriate for an appellate court to do so." (quoting *Bueno v. Workman*, 20 So. 3d 993, 998 (Fla. 4th DCA 2009) (internal alterations, quotations omitted))); *Ruiz v. Policlinica Metropolitana, C.A.*, 260 So. 3d 1081, 1091 (Fla. 3d DCA 2018)

---

[7] Judge Wozniak asserts that "*Robertson* plainly stands for the rule that an appellate court cannot undertake a tipsy coachman analysis to affirm a trial court's ruling when the inquiry is fact-intensive and there is no development in the record of those facts." *Robertson* does not say that, plainly or otherwise. *Robertson* does state that it was improper for a district court to employ the tipsy coachman doctrine to affirm the admission of evidence under the *Williams* rule, in part, because the trial court did not make the determinations necessary for the evidence to be admitted under the *Williams* rule, including "whether the prejudicial effect of the prior crime substantially outweighs its probative value." *Robertson*, 829 So. 2d at 907-08. This appears to be why the Fifth District also relied on *Robertson* in concluding that the tipsy coachman doctrine could not be employed to affirm the exclusion of evidence under Rule 403 where the trial court never conducted a Rule 403 analysis. *Gerry*, 855 So. 2d at 163 n.5.

24

(The tipsy coachman doctrine "is inapplicable where a lower court has not made factual findings on an issue." (quoting *Harris v. State*, 238 So. 3d 396, 403 (Fla. 3d DCA 2018) (internal quotations omitted))). Just as an appellate court is not equipped to make factual findings in the first instance, an appellate court likewise is not equipped to exercise discretion regarding the admission or exclusion of evidence in the first instance.

We finally note that our decision is in accord with the Fifth District and at least one decision of the First District, but is in conflict with two other decisions of the First District.[8] In *Gerry*, the Fifth District, also relying on *Robertson*, concluded that there was no support in the record to employ the tipsy coachman doctrine to affirm a trial court's exclusion of evidence under Rule 403 where the trial court "never engaged in the weighing process under section 90.403 to determine whether

---

[8] Our decision is also in accord with the United States Supreme Court, which, applying the federal version of Rule 403, has held, in a unanimous opinion written by Justice Clarence Thomas, that an appellate court should not conduct a Rule 403 analysis where the trial court has not done so. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 386-87 (2008) ("The Court of Appeals, upon concluding that such evidence was not *per se* irrelevant, decided that it was relevant in the circumstances of this case and undertook its own balancing under Rule 403. But questions of relevance and prejudice are for the [trial court] to determine in the first instance. Rather than assess the relevance of the evidence itself and conduct its own balancing of its probative value and potential prejudicial effect, the Court of Appeals should have allowed the [trial court] to make these determinations in the first instance, explicitly and on the record. With respect to evidentiary questions in general and Rule 403 in particular, a [trial] court virtually always is in the better position to assess the admissibility of the evidence in the context of the particular case before it." (internal citations omitted)).

25

the evidence should be excluded." 855 So. 2d at 163 n.5. Likewise, in *Webster*, the First District declined to apply the tipsy coachman doctrine to affirm a trial court's exclusion of evidence under Rule 403 because "[t]he weighing contemplated by section 90.403 is for the trial court, in the first instance, and here the trial court ruled the subsequent ban altogether irrelevant, so that no weighing took place below." 27 So. 3d at 809 n.12.

In two decisions issued prior to and after *Webster*, respectively, the First District took a different position. In *Childers v. State*, the First District, sitting en banc, applied the tipsy coachman doctrine to affirm the trial court's exclusion of evidence under Rule 403 even though the trial court had not made any determination under Rule 403. 936 So. 2d 585, 592-93 (Fla. 1st DCA 2006). The court did so without engaging in any discussion as to the propriety of employing the tipsy coachman doctrine to affirm under Rule 403 where the trial court made no determination as to whether the evidence should have been excluded under Rule 403. *Id*. On rehearing, then-Chief Judge Kahn expressed his disagreement with the court's use of the tipsy coachman doctrine to affirm the exclusion of evidence under Rule 403 based on similar reasoning to that which we articulated above. *Childers v. State*, 936 So. 2d 619, 637 (Fla. 1st DCA 2006) (Kahn, C.J., dissenting). Judge Kahn asserted that "If any one statute on the books in Florida, and particularly any statute in the Evidence Code, begs the exercise of sound discretion by a trial judge, it is

26

section 90.403." *Id*. He also noted that the appellate court's application of Rule 403 in the first instance resulted in that determination not being subject to appellate review by any court under any standard:

> By its application of the "tipsy coachman" rule in the present case, the majority has essentially applied a trial court standard of discretion in a case where the trial court never exercised discretion itself. As a result, this court's application of its own discretion under section 90.403 is not subject to review under any standard and, arguably, the whole purpose of the statute has been defeated because the trial court has never made the critical, initial consideration. One struggles to understand how this court can weigh in on an abuse of discretion question in the absence of a trial court's exercise of discretion.

*Id*. Judge Kahn felt sufficiently strong about the issue that he urged the certification of the following question of great public importance:

> May a district court of appeal utilize the "tipsy coachman" doctrine by applying section 90.403, Florida Statutes, in a case where the trial court has never exercised its discretion concerning the admissibility of the particular evidence in question?

*Id*. at 638. Judge Kahn was correct that if an appellate court were to employ the tipsy coachman doctrine by applying Rule 403 where the trial court has not done so, the appellate court's determination would not be subject to appellate review by any court, absent the rare case in which the Florida Supreme Court possessed and chose to exercise jurisdiction over the case.

While *Webster* was issued by the First District after *Childers* and may potentially create doubt as to whether *Childers* remains the law of the First District, the First District relied on *Childers* in *Mizell v. State*, a case issued after *Webster*, to

27

again apply the tipsy coachman doctrine to affirm a trial court's exclusion of evidence under Rule 403 where the trial court did not make any determination as to whether the evidence should be excluded under Rule 403. 350 So. 3d at 102. Thus, the most recent decision from the First District on this issue reaffirms *Childers*'s holding that an appellate court can apply the tipsy coachman doctrine to affirm a trial court's exclusion of evidence under Rule 403 where the trial court did not make any determination as to whether the evidence should be excluded under Rule 403. The *Mizell* court reaffirmed *Childers*'s holding without discussing *Webster* or examining the propriety of employing the tipsy coachman doctrine to affirm under Rule 403 where the trial court did not conduct any analysis under Rule 403. *See* 350 So. 3d at 102. For the reasons stated herein, we respectfully disagree with the *Mizell* and *Childers* courts on this point, and, as a result, pursuant to Article V, Section 3(b)(4) of the Florida Constitution, we certify this decision to be in direct conflict with those decisions.

## Conclusion

The legal grounds relied upon by the trial court to exclude Lieutenant Allaire's deposition testimony did not support exclusion of the testimony. For the reasons detailed above, the record does not support employing the tipsy coachman doctrine to affirm the trial court's exclusion of Lieutenant Allaire's testimony under Rule 403. For these reasons, the final judgment is reversed, and this case is remanded for

a new trial. At the new trial, if the Sheriff objects to the admission of Lieutenant Allaire's deposition testimony under Rule 403, the trial court may conduct a Rule 403 analysis to determine whether all or any portion(s) of Lieutenant Allaire's testimony should be excluded.

REVERSED and REMANDED; CONFLICT CERTIFIED.

GANNAM, J., concurs.
WOZNIAK, J., concurs in part and dissents in part, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

_____

WOZNIAK, J., concurring in part, dissenting in part.

I agree with the majority insofar as it concludes that the trial court's stated reasons for excluding Lt. Allaire's testimony were incorrect; the testimony does not fall squarely within the accident report privilege of section 316.066(4), Florida Statutes (2023), the subsequent remedial measure exclusion of section 90.407, Florida Statutes (2023), or the traffic citation exclusion of section 316.650(9), Florida Statutes (2023). However, I would still affirm under the tipsy coachman doctrine because Lt. Allaire's testimony in this admittedly fully developed record was excludable as irrelevant under sections 90.401 and 90.402, Florida Statutes

29

(2023), or even if relevant, excludable under section 90.403, Florida Statutes (2023). Accordingly, I decline to join the majority's opinion to the extent that it concludes to the contrary.

I begin by addressing relevancy and section 90.403, then move on to explain why the tipsy coachman doctrine applies to permit affirmance.

It is axiomatic that "[i]n order to be admissible, evidence must be relevant. That is, the evidence must 'tend[ ] to prove or disprove a material fact.' § 90.401, Fla. Stat. (2012)." *Okafor v. State*, 225 So. 3d 768, 773 (Fla. 2017) (quoting *Davis v. State*, 207 So. 3d 177 (Fla. 2016)). Consequently, irrelevant evidence is inadmissible. Even if evidence is relevant, several rules of evidence, such as section 90.403, still prohibit the introduction of such evidence. The first step of a section 90.403 analysis is a relevance inquiry. *See* § 90.403, Fla. Stat. (making *relevant* evidence "inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence"). Only if evidence is indeed relevant is the balancing test employed to determine whether its probative value is outweighed by its unfairly prejudicial effect.

I do not believe that Lt. Allaire's testimony clears this first step of relevance. Lt. Allaire, as a member of the traffic safety board, investigated Dep. Harvey's conduct in the underlying accident. The traffic safety board determined, as the

majority notes, that the collision was a "preventable crash." This determination, Lt. Allaire explained, is assigned "where the agency member operating the vehicle *could have done something* to -- on his part of his operation of the vehicle [--] to avoid the crash." It is this determination and explanation that Caballero-Quinones sought to bring before the jury. Unclear, however, is how such a post-accident determination, using a standard inapplicable to a negligence query,[9] could tend to "prove or disprove a material fact" to a jury determining negligence. Presumably, the same facts available to the jury were also available to the traffic safety board; the determination made by the traffic safety board following its investigation is nothing other than its own characterization of those facts. It neither proves nor disproves any fact properly before the jury.

Even if, however, such a determination could be relevant, the danger of unfair prejudice is both readily apparent and abundant and would outweigh any potential probative value. The jury was empaneled for the sole purpose of determining the Sheriff's Office's negligence. Doubtless this purpose would have been abrogated by the jury's substitution of the traffic safety board's conclusion for its own. Indeed, I

---

[9] "[C]ould have done something" is not equivalent to a finding that a defendant failed to exercise reasonable care under the circumstances and that such a failure *caused* the damages at issue.

31

do not see how any proper exercise of discretion could lead to Lt. Allaire's testimony being admitted.[10]

Caballero-Quinones, for his part, argues only that there is nothing "*unfairly prejudicial about*" Lt. Allaire's testimony; he fails to elaborate beyond this proclamation. Indeed, the record is devoid of any argument in opposition to applying section 90.403. Caballero-Quinones filed no response to the Sheriff's Office's motion in limine, which raised section 90.403; no transcript of the motion in limine hearing exists; and Caballero-Quinones's argument wherein he sought reexamination of the trial court's earlier ruling was primarily confined to whether Lt. Allaire's testimony was an admission under section 90.803(18), which would be dispositive only insofar as the trial court had excluded such evidence because it constituted hearsay. But, Caballero-Quinones now receives a windfall: a new trial. On remand, should the trial court now properly exclude the evidence under section 90.403, then there is no functional difference between the first and second trials—

---

[10] I find persuasive *Kutner v. State, Department of Highway Safety & Motor Vehicles*, 568 So. 2d 973, 974 (Fla. 3d DCA 1990), wherein the Third District determined that the trial court properly excluded evidence of an administrative disciplinary proceeding against a trooper, finding that "the probative value of such proceedings was substantially outweighed by the danger of unfair prejudice. § 90.403, Fla. Stat. (1989)." Here, like the plaintiff in *Kutner*, Caballero-Quinones was injured in an accident involving a police vehicle. Then, the officer driving, Dep. Harvey, was found to be at fault for the accident and in violation of agency policy—because he could have done something—as a result of an administrative proceeding or assessment. Unremarkably, as in *Kutner*, the evidence should have been excluded under section 90.403.

the exact same evidence would be presented to the jury in both. If, on the other hand, the trial court admits the evidence, then such a ruling would be fertile ground for reversal.

Having concluded that application of section 90.403 would mandate exclusion of Lt. Allaire's deposition testimony, I turn now to explain why the tipsy coachman doctrine applies. The doctrine is available if the trial court ruled correctly, even if for the wrong reasons, "as long as the evidence or an alternative theory supports the ruling." *Muhammad v. State*, 782 So. 2d 343, 359 (Fla. 2001); *see Caso v. State*, 524 So. 2d 422, 424 (Fla. 1988) ("A conclusion or decision of a trial court will generally be affirmed, even when based on erroneous reasoning, if the evidence or an alternative theory supports it." (first citing *Applegate v. Barnett Bank of Tallahassee,* 377 So. 2d 1150 (Fla. 1979); and then citing *Cohen v. Mohawk, Inc.,* 137 So. 2d 222 (Fla. 1962))). Here, the facts were sufficiently developed for a section 90.403 analysis (an alternative theory to affirm the trial court's ruling), as both parties conceded at oral argument. Although the trial court did not expressly undertake that analysis, the alternative theory would sustain the trial court's exclusion of Lt. Allaire's deposition.

I would break no new ground by affirming by application of a tipsy coachman analysis. *See Childers v. State*, 936 So. 2d 585 (Fla 1st DCA 2006) (en banc) (affirming under tipsy coachman analysis the trial court's exclusion of evidence

33

where trial court's basis for exclusion was incorrect but exclusion was proper under section 90.403); *Mizell v. State*, 350 So. 3d 97, 102 (Fla. 1st DCA 2022) ("While the trial court did not rely on section 90.403, and this rationale, we may consider this logic and legal authority in affirming the judgment." (citing *Childers*, 936 So. 2d at 593-96)). Indeed, tipsy coachman has been used to affirm rulings involving the exercise of a trial court's discretion on fact-intensive decisions, so long as the record has been fully developed. *See, e.g.*, *Koonce v. State*, 425 So. 3d 6 (Fla. 4th DCA 2025) (affirming, by application of tipsy coachman, admission of testimony of prior sexual offenses; admission was supported by section 90.404(2) although that statute was not argued by state); *Riley v. State*, 293 So. 3d 34 (Fla. 2d DCA 2020) (affirming, by application of tipsy coachman, trial court's direct criminal contempt order although trial court had improperly relied solely on unverified statements by bailiffs; evidence showed that trial court had itself observed defendant's noncompliance with court's instruction, thus supporting contempt order); *Ruff v. State*, 115 So. 3d 1023 (Fla. 4th DCA 2013) (affirming, by application of tipsy coachman, the admission of statement to co-worker as a spontaneous statement, which argument was first presented on appeal).

The majority's analysis of *Robertson v. State*, 829 So. 2d 901 (Fla. 2002), does not change my conclusion. In *Robertson*, the Florida Supreme Court considered an appellate court's affirmance of the admission of testimony on alternative fact-

34

intensive *Williams* rule grounds. The decision turned on whether the record was fully developed such that the appellate court could properly make a *Williams* rule[11] determination and affirm by application of the tipsy coachman doctrine, with the supreme court concluding it was not. *Robertson* plainly stands for the rule that an appellate court cannot undertake a tipsy coachman analysis to affirm a trial court's ruling when the inquiry is fact-intensive and there is no development in the record of those facts. It would be, in my opinion, pointless to reverse a judgment rendered following a four-day jury trial where no new facts are contemplated to be produced on remand.

---

[11] The *Williams* rule is codified in section 90.404(2)(a), Florida Statutes:

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

The *Williams* rule requires the trial court to make "multiple determinations" before admitting *Williams* rule evidence; this "highly individualized, factually intensive inquiry" requires consideration of

> whether the defendant committed the prior crime, whether the prior crime meets the similarity requirements necessary to be relevant as set forth in our prior case law, whether the prior crime is too remote so as to diminish its relevance, and finally, whether the prejudicial effect of the prior crime substantially outweighs its probative value.

*Robertson*, 829 So. 2d at 907-08. This fact intensive inquiry is required to protect a defendant's due process right not to be convicted of an uncharged crime. *Morgan v. State*, 146 So. 3d 508, 512 (Fla. 5th DCA 2014).

35

Separately, I write to call the Legislature's attention to the chilling effect the majority's ruling will have on internal reviews. Public policy should favor candid self-reflection, but allowing admission of the traffic safety board's conclusion opens the door to undesirable consequences. What motive will any employer have to engage in honest and forthright post-incident investigations if the outcome can be used against it at trial? The purpose of self-investigation, in addition to any disciplinary measures, is to provide the employer with information it can use to hone its focus to better prevent such accidents in the future—an outcome that benefits society. For this reason, the Legislature may wish to consider a statutory amendment to clarify that internal investigations are not subject to admission at trial.

_____

Justin Bleakley, of Martinez Manglardi, P.A., Kissimmee, for Appellant.

Barbara W. Davis, of Barbara W. Davis, Attorney at Law, Lakeland, for Appellee, Sheriff Grady Judd, in his official capacity as Sheriff of Polk County.

No Appearance for Appellees, Kyle T. Wilder and Wilder Outdoors, LLC.